## SEATTLE CURB EXCHANGE v. KNIGHT.

## In re COCHRAN'S ESTATE.

### No. 6144.

### Circuit Court of Appeals, Ninth Circuit.

### Jan. 5, 1931.

See, also, 44 F.(2d) 70.

Hartman & Hartman, of Seattle, Wash., for appellant.

Leopold M. Stern, of Seattle, Wash., for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

This is an appeal from an order of the District Court for the Western District of

Washington, Northern Division, confirming an order of the referee in bankruptcy enjoining the Seattle Curb Exchange from proceeding against the trustee in bankruptcy in an action in the state court then pending, and also directing the referee to proceed and to determine the rights of the Seattle Curb Exchange, hereinafter called the exchange, to the proceeds derived from the sale of a seat of the bankrupt therein. It appears from the findings of the referee that the bankrupt, George S. Cochran, was a member of the Seattle Curb Exchange; that one R. L. Phippeny testified that on August 30, 1929, shortly prior to the filing of the voluntary petition in bankruptcy on September 3, 1929, the bankrupt traded his membership in said exchange to Phippeny for mining stock worth about $3,200, and as evidence thereof indorsed his name upon the certificate of membership in said exchange, and also made a written assignment thereof. Cochran was adjudged bankrupt on September 4, 1929. On September 4 Phippeny applied to the exchange for transfer of the membership to him, but this application was refused. The exchange suspended Cochran from membership a few minutes after 10 o'clock on September 4, 1929, and on September 25, 1929, long after the adjudication of the bankruptcy, sold said seat in accordance with its rules and by-laws for $3,900, and said exchange claims to have disbursed all the proceeds of such sale to members thereof entitled thereto under the rules of the exchange giving creditor members a prior right to proceeds of the sale of a seat; that Phippeny brought suit for damages for the alleged conversion of said seat against the Seattle Curb Exchange in the superior court of King county, Wash., after the adjudication of bankruptcy herein; that the trustee in bankruptcy was made a party to this action by a cross-complaint of the Seattle Curb Exchange, praying that the trustee in bankruptcy and Phippeny be required to interplead with reference to their alleged rights to said seat; that on December 6, 1929, the trustee had filed a petition in the bankruptcy proceedings for the recovery of the proceeds of the sale of the Cochran membership, and his petition was pending in bankruptcy at the time the Seattle Curb Exchange obtained leave of the state court to make said trustee a party defendant to said cross-complaint in the above-entitled action; that the bankruptcy court had not consented that the trustee be sued in such action in the state court.

■■ The question involved on this appeal is whether or not the right to the proceeds of the sale of the seat in the Seattle Curb Exchange, as between the trustee in bankruptcy and the Seattle Curb Exchange, must be litigated in the bankruptcy court to the exclusion of the state court. This turns upon the primary question as to whether or not the seat came into the custody of the bankruptcy court at the time of the filing of the petition of bankruptcy or of the adjudication of bankruptcy. That question was carefully and exhaustively considered by Judge Lurton, then of the Circuit Court of Appeals of the Sixth Circuit, in O'Dell v. Boyden, 150 F. 731, 736, 10 Ann. Cas. 239. In that case it was said:

"The 'seat' or 'membership' continued to be the 'seat' of Henrotin [one of the bankrupt partners], and was a pecuniary asset which passed to his trustee. It was as much in his custody and possession as such a species of property is capable of. To deny the trustee's possession would be to deny the capability of possession of a chose in action or other incorporeal right or equity. The possession may be constructive, and not manual; but it is only so because such property is not capable of a more tangible custody. Only through a court of equity can the pecuniary value of such an asset be realized to creditors or assignees. Only by decree in personam compelling the bankrupt member can such a transfer of membership be effectuated as will put the buyer in the place of Henrotin as a member. Over him for that purpose the bankrupt court has exclusive control, and in this sense, also, may it be said that the 'seat' or 'membership' was in custodia legis when the trustee sought the aid of the court to adjudicate the claims and liens asserted by O'Dell."

This statement was quoted with approval by the Supreme Court, speaking through Mr. Chief Justice Taft, in Board of Trade of City of Chicago v. Johnson, 264 U. S. 1, 13, 44 S. Ct. 232, 235, 68 L. Ed. 533. The Supreme Court also held in that case that the title of the Chicago Board of Trade was not adverse to the bankrupt, stating in that regard that "it holds the membership for the bankrupt in conformity to the rules as to his enjoyment and disposition of it." The Supreme Court also, in that case, cites In re Hoey, 290 F. 116, by the Circuit Court of Appeals of the Third Circuit. In the latter case a corporation claimed to be the equitable owner of the stock exchange seat of a bankrupt by reason of a transfer to it before the institution of the bankruptcy proceedings, and brought an action in the state court to subject the proceeds of the sale of the stock

**36**

exchange seat to its claim. The receiver in bankruptcy sought and procured from the District Court of the United States acting in bankruptcy a temporary injunction against the prosecution of the action in the state court. The District Court issued such injunction, for the reason that on the date of the filing of the petition the bankruptcy court, or its receiver, obtained constructive possession of the surplus funds in the hands of the stock exchange. The decision of the District Court was affirmed.

It is clear from the foregoing cases that neither the alleged transfer of the seat to Phippeny before the filing of petition in bankruptcy nor the subsequent sale of the seat by the exchange deprived the court of its exclusive jurisdiction to determine the disposition of the proceeds of the sale.

On this appeal, the only question submitted to us is the jurisdiction of the District Court to make an order restraining the Seattle Curb Exchange from proceeding against the trustee in the state court to litigate the right to the proceeds of the sale of the seat in the exchange. Neither the referee nor the trial court, in passing upon his order, made any order with relation to the disposition of said proceeds, leaving the exchange to litigate before the referee its rights to the fund derived from the sale of the seat of the bankrupt. The decisions herein cited seem to indicate clearly that under the rules of the exchange it would be entitled to apply the proceeds derived from the sale of the seat of the bankrupt member to the claims of its members.

 Apparently there is sufficient evidence before the referee on which to base an order denying the right of the trustee to any portion of the fund upon the ground that the fund had been exhausted by the disbursement thereof on preferred claims in accordance with the rules of the exchange. We do not, however, pass upon this question, nor do we express any opinion thereon, for the reason that the trial court and the referee left those rights undetermined upon the petition of the referee then pending, and we only allude to the matter for the reason that, if the evidence clearly showed that the disbursements made by the exchange were authorized by its rules, and were made upon claims justly due and having a prior right to the fund under such rules, there would be no fund properly payable to the trustee. Board of Trade of City of Chicago v. Johnson, 264 U. S. 1, 44 S. Ct. 232, 68 L. Ed. 533. We wish to point out, however, that in the order appealed from

there is a direction that "the referee will proceed to determine the right of the Exchange to the accrued dues and preferred liens, if any, of co-members of the bankrupt in the Exchange assertable after the membership passed to the trustee and settle all adverse claims against said 'seat.'" The appellant is apprehensive that this will require the exchange to deposit the entire fund with the trustee on a "turnover" order before litigating its right to retain or pay out the sums it claims rightly to have retained and disbursed from the proceeds of the sale of the seat. The real question now before the District Court is as to the existence of a surplus from the sale of the seat after the payment by the exchange of prior claims thereto, and it is this surplus, if any, that constitutes property of the bankrupt to be paid to the trustee. The above order of reference is no proper part of an order of injunction or of the order of affirmance thereof. Such an order of reference is interlocutory, and is not properly appealable (see Grant v. Phœnix Mutual Life Ins. Co., 121 U. S. 118, 7 S. Ct. 849, 30 L. Ed. 909), while the order affirming the injunction of the referee is appealable. To avoid any inference that, by allowing the appeal from the order of May 5, 1930, we have passed upon this order of reference upon this appeal or have approved it, it will be stricken from the order appealed from, and, thus modified, the order of the District Court of May 5, 1930, affirming the injunction of the referee, is affirmed, without costs to appellant.